IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

DEBBIE DEAVERS STURDIVANT,      )
*et al.*,                       )
                                )
          Plaintiffs,           )
                                )
v.                              )          Case No. 7:05-cv-305-TMP
                                )
DILLARD'S, INC., *et al.*,      )
                                )
          Defendants.           )

## MEMORANDUM OPINION

The defendant, Dillard's Inc., filed a motion for summary judgment on February 16, 2007. The matter has been fully briefed. The parties have consented to the jurisdiction of the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c).  Having considered all of the arguments and evidence offered in support of and in opposition to the motion for summary judgment, the court enters this memorandum opinion, granting the motion in part and denying it in part.

## SUMMARY JUDGMENT STANDARD

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and

identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. Celotex, 477 U.S. at 322-23. There is no requirement, however, "that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim." Id. at 323.

Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions of file,' designate 'specific facts showing that there is a genuine issue for trial.'" Id. at 324 (quoting Fed. R. Civ. P. 56(e)). The nonmoving party need not present evidence in a form necessary for admission at trial; however, he may not merely rest on his pleadings. Celotex, 477 U.S. at 324. "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322.

After the plaintiff has properly responded to a proper motion for summary judgment, the court must grant the motion if there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The substantive law will identify which facts are material and which are irrelevant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242,

248 (1986).  A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Id. at 248.  "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  Id. at 249.  His guide is the same standard necessary to direct a verdict:  "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  Id. at 251-52; see also Bill Johnson's Restaurants, Inc. v. N.L.R.B., 461 U.S. 731, 745 n.11 (1983).  However, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.  Anderson, 477 U.S. at 249 (citations omitted); accord Spence v. Zimmerman, 873 F.2d 256 (11th Cir. 1989).  Furthermore, the court must "view the evidence presented through the prism of the substantive evidentiary burden," so there must be sufficient evidence on which the jury could reasonably find for the plaintiff.  Anderson, 477 U.S. at 254; Cottle v. Storer Communication, Inc., 849 F.2d 570, 575 (11th Cir. 1988).  Nevertheless, credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are the function of the jury, and therefore the evidence of the non-movant is to be believed and all justifiable inferences are to be drawn in his favor.  Anderson, 477 U.S. at 255.  The non-movant need not be given the benefit of every inference but only of every reasonable inference.  Brown v. City of Clewiston, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

# DISCUSSION

The plaintiffs in the instant action assert claims arising under 42 U.S.C. § 1981[1] and Alabama state law based on allegations that they were charged more for hair services at Dillard's salons than Caucasian customers, based on their race, African American.  They assert state-law claims of negligent supervision, fraud, suppression, and unjust enrichment.  The applicable law and the facts, viewed in the light most favorable to plaintiffs, as non-movants, will be addressed as applied to each

---

[1]     As amended, 42 U.S.C. § 1981 provides:

(a) Statement of equal rights

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

(b) "Make and enforce contracts" defined

For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

(c) Protection against impairment

The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law.

individual plaintiff, in the context of the salon at which each plaintiff received the services made the

subject of this action.[2]

## A. Race Discrimination

In order to establish a *prima facie* case of race discrimination under § 1981, a plaintiff must

demonstrate that (1) she is a member of a racial minority; (2) that there was an intent to discriminate

on the basis of race by the defendant; and (3) that the discrimination arose from one of the activities

protected by the statute — in this case the right to make and enforce contracts.  See, *e.g.*, Rutstein

v. Avis Rent-A-Car Systems, Inc., 211 F.3d 1228, 1235 (11th Cir. 2000), cert. denied, 532 U.S. 919,

121 S. Ct. 1354, 149 L. Ed. 2d 285 (2001); Tippie v. Spacelabs Medical, Inc., 180 Fed. Appx. 51,

56 (11th Cir. 2006) ("Section 1981 prohibits intentional race discrimination in the making and

enforcement of public and private contracts, including employment contracts."); Ferrill v. Parker

Group, Inc., 168 F.3d 468, 472 (11th Cir. 1999); White v. Florida Hwy. Patrol, 928 F. Supp. 1153,

---

[2]     The plaintiffs, in setting forth the facts in the opposition to summary judgment, recite
much testimony from employees who worked in Dillard's salons in cities or stores that were never
patronized by the plaintiffs in this case.  While that evidence may have been relevant to the claims
alleged by a purported class of African-American customers, it is not relevant to the question of
whether each of the named plaintiffs has established a *prima facie* case of race discrimination.  This
court already has determined, in deciding the motion for class certification, that plaintiffs have failed
to offer substantial evidence of any over-arching or systematic policy of race-based pricing on a
company-wide basis.  To the contrary, evidence has overwhelmingly demonstrated that general
policies on prices were set in the individual salons, by separate managers.  Moreover, many of the
stylists testified that they made the final decision as to what price to charge their individual
customers.  That discriminatory pricing may have occurred at some salons does not mean that
plaintiffs patronizing other Dillard's salons were actual victims of racial discrimination.  For
standing purposes, each plaintiff must establish that *she* suffered an injury personal to herself, not
merely that other black customers at other Dillard's salons might have suffered discrimination.

1157 (M.D. Fla. 1996).   A *prima facie* showing under § 1981 requires proof of *intentional* racial

discrimination.  See Lee v. Washington Cty. Bd. of Educ., 625 F.3d 1235, 1237 (5th Cir. 1980).[3]  The

test for intentional discrimination under § 1981 is the same as in Title VII discrimination cases.  See

Grier v. Partek Indus., Inc., 903 F. Supp. 1480, 1491 (M.D. Ala. 1995) and cases cited therein.

Actions for racial discrimination under § 1981 in Alabama are subject to a two-year limitation

period.  Cf. Palmer v. Stewart County School Dist., 178 Fed. Appx. 999 (11th Cir. 2006); Davis v.

Board of School Com'rs of Mobile County, 600 F.2d 470 (5th Cir. 1979) (then-existing one-year

limitation applied to § 1981 action); Moore v. Liberty National Life Insurance Co. 267 F.3d 1209,

1219 (11th Cir. 2001).

As in a Title VII employment case, the plaintiff may establish discrimination through the use

of direct or circumstantial evidence.  Direct evidence is evidence that establishes the existence of

discriminatory intent without requiring the factfinder to make any inferences or presumptions.

Carter v. City of Miami, 870 F.2d 578, 581-82 (11th Cir. 1989).  By contrast, circumstantial evidence

"suggests, but does not prove, a discriminatory motive."  Wilson v. B/E Aerospace, Inc., 376 F.3d

1079, 1086 (11th Cir. 2004).  Using circumstantial evidence to prove intentional race discrimination

in the employment context, a black plaintiff must demonstrate that she was treated differently than

a similarly-situated white employee.  See Silvera v. Orange County School Bd., 244 F.3d 1253, 1259

(11th Cir. 2001), cert. denied, 534 U.S. 976, 122 S. Ct. 402, 151 L. Ed. 2d 305 (2001).

---

[3]      In Bonner v. City of Prichard, 661 F.2d 1206, 1207 (11th Cir. 1981)(*en banc*), the
Eleventh Circuit Court of Appeals adopted as precedent decisions of the former Fifth Circuit Court
of Appeals rendered prior to October 1, 1981.

Defendant argues that this burden of providing such comparator evidence has been extended to discrimination claims outside of the employment realm. See, *e.g.*, Boykin v. Bank of America, 162 Fed. Appx. 837 (11th Cir. 2005), cert. denied, 129 S. Ct. 2931, 165 L. Ed. 2d 977 (2006). That case arises under the Fair Housing Act, and a claim under that statute requires a plaintiff to show "that the defendant continued to approve loans for applicants outside of the plaintiff's protected class with similar qualifications." Boykin, 162 Fed. Appx. at 839. The court is unaware of any case law that specifically requires a plaintiff in a § 1981 consumer transaction case to identify a "nearly identical" consumer of another race. Other courts have noted the paucity of authority regarding proof of a § 1981 claim in a consumer case, where there is no employment contract at issue. See Benton v. Cousins Properties, Inc., 230 F. Supp. 2d 1351 (N.D. Ga. 2002) (plaintiff who rented a conference room at a hotel and received poor service failed to show that any other person of any other race had been treated differently); see also Overby v. Chase Manhattan Bank, 351 F. Supp. 2d 219 (S.D.N.Y. 2005) (black bank customer failed to provide evidence that white customers were offered investment options that he was not offered). It is only logical to conclude, however, that the mere assertion that consumers of one race paid a certain price for a good or service, in the absence of any evidence that consumers of another race paid less for the same essential good or service, cannot sufficiently prove discrimination. The pricing of goods and services in the marketplace is sufficiently complex, varying from place to place and time to time, that one cannot simply presume discrimination without some showing of an unexplained price differential between customers of different races on essentially the same goods and services.

7

When the plaintiff relies upon circumstantial evidence, rather than direct evidence, she creates a presumption of discrimination by establishing a *prima facie* case. The presumption may be rebutted, however, if the defendant offers a legitimate, nondiscriminatory reason for the alleged discriminatory action. Once the nondiscriminatory reason is articulated, the burden shifts to the plaintiff to show that the reason is either not worthy of belief or that, in light of all the evidence, a discriminatory reason more likely motivated the discriminatory act than the proferred reason. See Standard v. A.B.E.L. Servs. Inc., 161 F.3d 1318, 1331-33 (11th Cir. 1998), reh'g and reh'g *en banc* denied, 172 F.2d 884 (11th Cir. 1999), citing Combs v. Plantation Patterns, 106 F.3d 1519, 1528 (11th Cir. 1997), cert. denied, 522 U.S. 1045, 118 S. Ct. 685, 139 L. Ed. 2d 632 (1998).

When the plaintiff relies upon direct evidence of discrimination, however, there is more than a simple rebuttable presumption of discrimination. Where direct evidence of discrimination is shown, there is inevitably a genuine issue of fact precluding summary judgment. In such a case, the defendant is unable to show the absence of any genuine issue of material fact. While the defendant may be able to carry a burden of proving by a preponderance of the evidence at trial that the price differences at issue were actually based on stylist experience, products used, hair texture, or other factors, the plaintiff who has demonstrated the elements of her claim by direct evidence defeats the motion for summary judgment.

## B.  Evidence of Price Discrimination

As mentioned, the court already has determined in connection with the plaintiffs' motion for class certification that there is no evidence of a corporate-wide policy of racially discriminatory

pricing.  While there is disturbing evidence that racially discriminatory pricing went on at some salons, even plaintiffs admit that they did not suffer discriminatory pricing at other Dillard's salons in Nashville, Bowling Green, and Charleston.   There simply is no evidence that Dillard's management authorized or ratified racially discriminatory pricing as a corporate policy or practice. Indeed, undisputed evidence presented by Dillard's showed that the company had an articulated and well-established anti-discrimination policy.

In light of the absence of proof of a company-wide policy of discriminating against African-American salon customers on price, the court must examine the evidence as it relates to the practices at individual salons, and particularly the effect of those practices on these specific plaintiffs.

### 1.  Eastdale Mall

The plaintiffs have presented evidence, primarily through the testimony of Linda Gail Bennett, former salon manager at the Eastdale Mall salon from 2003 to 2005, that the base prices for hair services varied  based on the race of the customer, and that black customers were routinely charged higher rates than white customers.  Similar testimony was elicited from Patricia Lewis, a former stylist at the Eastdale Dillard's, who testified that a policy of charging African Americans more than Caucasians was a policy that the Eastdale salon applied "to everybody."  Another Eastdale employee, Cynthia Ellison, the salon coordinator, said that black customers would not be charged

"less than $30" for a wash and set, even though white customers were usually charged $18.[4]  This evidence must be construed as direct evidence of race discrimination.

While Dillard's has argued that stylists made the final decisions about pricing and that prices reflected the amount of time and the cost of products that went into a given style, rather than the race of the customer, there exists at least an issue of fact as to whether the dual-pricing system that apparently existed at the Eastdale Mall constitutes race-based discrimination.  Accordingly, any plaintiff who can demonstrate that she was a customer of the Eastdale Mall salon after February 2003[5] and paid more for her hair services than a similarly situated white customer paid has demonstrated the existence of a genuine issue of material fact as to whether the defendant intentionally discriminated against black customers, and her claims are not due to be dismissed on the basis of the defendant's motion for summary judgment.  Four of the seven plaintiffs in this case allege that they were damaged by the alleged discrimination at the Eastdale Mall salon.

### a. Vaughan Thomas

Vaughan Thomas has paid for salon services on at least two occasions at the Dillard's Eastdale Mall store in Montgomery, Alabama.  In May of 2003, Ms. Thomas took her mother-in-law

---

[4]    Ellison worked at the Eastdale Mall Dillard's from 1998, apparently through 2005. To the extent that she offers probative evidence during the three-year time frame from 2002 to 2005, she confirms the testimony of Bennett.  Her testimony of pricing prior to 2002, however, relates to the events that are outside the relevant time period for statute of limitations purposes.

[5]    The complaint in this action was filed in February 2005.  Thus, the two-year limitation period pleaded by the defendant bars any action for discriminatory pricing prior to February 2003.

to the salon to have her hair styled as a gift.  Both Thomas and her mother-in-law are African-American.  She was charged $30 for the "wash and set" for her mother-in-law.  On that occasion, however, Thomas complained to the salon manager, Linda Gail Bennett, that the price seemed high, and the manager adjusted the price lower to $20.  On a separate occasion, Ms. Thomas had her own hair styled at the same salon.  She paid $30 to have her hair washed, combed around her head, and dried under a helmet drier.  The plaintiffs have presented evidence that the minimum charge for a wash and set service for an African American was $30, while the minimum charge for a wash and set for a Caucasian customer during that time was $20.  Coupled with the evidence from Linda Gail Bennett of an explicit dual-pricing system at the Eastdale salon, there is direct evidence that Thomas was subjected to racially discriminatory pricing on the second occasion she went to the salon,[6] in violation of § 1981.  Accordingly, Ms. Thomas has demonstrated a *prima facie* case of race discrimination.

---

[6]    On the first occasion, when she paid $20 for her mother-in-law's hair styling, plaintiff ultimately was not subjected to discriminatory pricing because she was charged the same $20 rate then being charged white customers.  This transaction cannot support a claim under § 1981 because she paid no more than white customers paid.

b.  Hollis Casey

Ms. Casey was a regular customer at Dillard's salons from the 1990s until 2004.[7]  She paid

$35 to have her hair styled at the Dillard's Eastdale Mall salon in 2004.  She observed that white

customers receiving similar services at that time paid between $15 and $20.  She complained that

she was overcharged to a manager, who explained to Ms. Casey that the hair products used and the

time involved in styling her hair was the reason that she was charged a higher price.  Ms. Casey has

presented evidence that she paid more for her hair-care than white customers receiving similar

services.  This evidence, coupled with the direct testimony of the former salon manager, Linda Gail

Bennett, that there was a dual pricing system at Eastdale during her tenure there from 2003 to 2005,

presents direct evidence that Ms. Casey was a victim of the discriminatory pricing system.

Accordingly, Ms. Casey has demonstrated a *prima facie* case of race discrimination.

---

[7]     The defendant has asserted that Ms. Casey's claims are time-barred, based upon her statement that she received services from Juwanna Pritchett, who left the employ of Dillard's in 2001.  However, Ms. Casey's testimony reflects that she continued to visit the salon and to have her hair styled by other stylists.  The defendant has failed to show the absence of a genuine issue of material fact in that she has stated (whether credibly or not) that she was a customer of the salon as recently as 2003 or 2004.  Accordingly, the motion as to Ms. Casey's claims on the ground that they are time-barred is due to be denied.

### c.  Vanessa Jones

In 2003, Ms. Jones had her hair styled at a Dillard's salon in Montgomery.[8]  Although the evidence is somewhat ambiguous as to whether this was the Eastdale Mall salon or the Montgomery Mall salon, Ms. Jones testified that Linda Talley was her stylist, and there is evidence that Ms. Talley worked for some periods of time at both salons.  Thus, it is possible that Ms. Jones had her hair styled by Talley at the Eastdale Mall.  On at least two occasions, she was charged $35 for a wash and set, and that she observed white customers paying less for similar services.  This evidence, coupled with Linda Gail Bennett's testimony of a race-based dual pricing system at the Eastdale Mall salon, creates at least sufficient issues of fact to preclude summary judgment for defendant.  Accordingly, Ms. Jones has demonstrated a *prima facie* case of race discrimination.

### d.  Patricia Mallory

Ms. Mallory visited the Dillard's salon at Eastdale Mall as recently as 2004.  She was given a price of $15 for a wash and set when she called prior to the visit, but was charged $30 when the

---

[8]     Plaintiffs assert in their brief in opposition to the instant motion for summary judgment that the salon was the Eastdale Mall location, although defendant asserts that the receipts produced by Ms. Jones show that she visited the Montgomery Mall location, not the Eastdale Mall salon.  When questioned at the hearing on plaintiffs' motion for class certification, Ms. Jones was asked if she visited the Eastdale salon, and she answered "Montgomery."  Her answer is, at best, ambiguous as to whether she was clarifying that the Eastdale Mall is in Montgomery, or was correcting defense counsel by informing him that she went to the Montgomery Mall location.  While it is not clear which salon Ms. Jones visited within the limitations period, the burden is on the defendant to demonstrate the absence of any genuine issue of fact, and it has failed to do so with regard to Ms. Jones.  The question whether she suffered discriminatory pricing at the Eastdale Mall salon during the limitation period after February 2003 is a question for the jury.

service was completed.[9]  This evidence, combined with other evidence of the pricing policy at the Eastdale Mall salon, particularly Linda Gail Bennett's testimony concerning a dual pricing system during the 2003 to 2005 time frame, supports a claim that Ms. Mallory was subjected to the alleged discriminatory pricing.   Accordingly, Ms. Mallory has demonstrated a *prima facie* case of race discrimination.

### 2.  McFarland Mall

Two of the plaintiffs in this case, Debbie Sturdivant and Lessie Harris, allege that they were customers at the McFarland Mall salon in Tuscaloosa, Alabama, and were charged more for hair services than white customers were charged for similar services.  Ms. Harris asserts that she was told by a Dillard's stylist in the 1990s that Dillard's charged African Americans more than it charged Caucasians.  The only services paid for by these two plaintiffs within the limitations period after February 2003 was a "style only" by Ms. Harris in 2003, for which she paid $15, and a "wash and set" purchased by Ms. Sturdivant in 2004, for which she paid $35.  There is no admissible evidence[10] as to the price any Caucasian customers paid for any similar services at that salon.  There also is no evidence from any McFarland Mall salon employee or manager that any dual-pricing policy at the

---

[9]     Testimony of Cynthia Ellison, who booked appointments at the Eastdale salon, indicated that she determined the time to be allotted for the service by whether a client who called in "sounded black."

[10]     Ms. Sturdivant has testified that, while at the salon, a Caucasian customer told her that she was usually charged between $15 and $20.  As defendant points out, however, this evidence is inadmissible hearsay and may not be considered by the court.  Plaintiff cannot prove a disparate pricing system by reference to extra-judicial statements made to her by a customer, someone whose statements cannot be attributed to Dillard's itself.

store existed within the 2003-and-after time frame relevant to this action.  Plainly, admissions concerning discriminatory pricing in the 1990s says little or nothing about the prices charged in 2003 and later, particularly in light of the fact that Dillard's acquired the salon in Tuscaloosa from the Mercantile Stores only in 1998.  Pricing practices carried out by before Dillard's acquired the salon 1998 are not probative of Dillard's policies or practices in 2002 and later.

### 1.  Debbie Sturdivant

Ms. Sturdivant's claims arise from a single visit to the McFarland Mall salon in October of 2004.  She received a "wash and set" for $35.  She did not discuss the price with any Dillard's employee either before or after the services were supplied. There is simply no admissible evidence establishing what the salon charged Caucasian customers for a similar service during that time period, nor any evidence that the $35 price paid by plaintiff was greater than or different from that charged any other customer.  There is no evidence from any employee or agent of the McFarlane Mall salon about the prices charges for any services, much less that racially disparate pricing occurred.  On this evidence, all that is shown is that on one occasion, plaintiff paid $35 for a "wash and set" at the McFarlane Mall saloon.  No inference of discrimination can be drawn from this evidence.  Accordingly, Ms. Sturdivant has failed to prove a *prima facie* case of discrimination, and her claim under § 1981 is due to be dismissed on the defendant's motion for summary judgment.

2.  Lessie Harris

Lessie Harris was a customer of the salon at McFarland Mall beginning in the 1990s, but it is unclear whether this included the time period after 1998 when Dillard's acquired the salon in its purchase of the Mercantile Stores.  Her stylist there, "PJ," told her that Dillard's charged African American customers more than white customers.  PJ told Harris about the price discrepancy "in the '90s," according to Harris's deposition, although Harris also testified in 2006 that it occurred "less than 5 years ago."   This evidence of discrimination, however, is too remote and too attenuated to support an assertion that Dillard's McFarland Mall salon discriminated against African American customers within the limitations period, which began no earlier than February of 2003, two years before the complaint was filed.[11]  The only service Ms. Harris alleges that she received within the two-year period was a 2003 "style only" without a shampoo from a stylist named Ranetta.[12]  She testified that she paid $15 for the "style only."  There is, however, no testimony that white customers were charged less than $15 for a similar service.  Moreover, Ms. Harris has admitted that Ranetta

---

[11]     Because claims alleging racial discrimination in contracting could be brought prior to 1990 under 42 U.S.C. § 1981, Alabama's two limitation period applies to these actions under § 1981, not the four-year federal catch-all statute.  See 28 U.S.C. § 1658; Jones v. R.R. Donnelley & Sons Co., 541 U.S. 369, 371, 124 S. Ct. 1836, 1839, 158 L. Ed. 2d 645 (2004); Palmer v. Stewart County School Dist., 178 Fed. Appx. 999, 1003 (11th Cir. 2006); Moore v. Liberty National Life Insurance Co. 267 F.3d 1209, 1219 (11th Cir. 2001).

[12]     The defendant argues that such a service cannot be the basis of a claim in this case because it is not a "wash and set."  The court agrees with the plaintiffs that while the class definition may have been limited to that service (which the court determined the plaintiffs had failed to adequately define), the complaint is broad enough to encompass any "salon services."  (Third Amended Complaint, ¶¶ 24-25).  Nevertheless, plaintiffs still must establish with substantial evidence that the service received was discriminatorily priced based on race.  Here, there simply is no evidence concerning any different prices charged white customers for a "style only" service.

told her that she charged the same price to all of her customers regardless of race, and there is no evidence that Ranetta's statement in 2003 was not true. Therefore, the only relevant, admissible evidence Ms. Harris has presented demonstrates that she was charged the same price for her hair services in 2003 as were white customers. Any discrimination claims arising from the 1990s clearly are time-barred, and any claim arising from the 2003 service has no basis in fact. For these reasons, defendant's motion for summary judgment on all claims asserted by Ms. Harris is due to be granted, and her claim under § 1981 dismissed.

### 3. Madison Square Mall

#### a. Sandra Moody

Ms. Moody was a regular customer at the Dillard's salon in the Madison Square Mall in Huntsville, Alabama, beginning in 2005.[13] Her stylist there was Valerie Maldonado. On one occasion, she was charged $38 for a wash and set, and on another occasion, was charged $40. She asked about a price list, and was shown a list that stated the cost of a wash and set was $18. Ms. Maldonado explained that the $18 charge was for a "real fast wash with rollers." She further stated that she charges all of her African American customers the charge for a "specialty style," which is $38, and not the $18 price listed for the "wash and set." Marita Boon, a former stylist at the salon, also testified that in 2004 the Huntsville salon had two sets of prices for services, with

---

[13] Although the plaintiffs offer the testimony of a stylist who worked at the Madison Square salon from 1993 until 1999 who said that a salon price list had separate prices for "ethnic" hair and for "Caucasian" hair, that evidence is too remote in time to prove that discriminatory pricing existed when this plaintiff visited the salon in 2004 and 2005.

lower prices for whites.  These statements constitute direct evidence of discrimination.  Accordingly, Ms. Moody has created a genuine issue of material fact concerning whether the $38 she paid for hair services was higher than a charge for similar services for white customers.  Therefore, the defendant's motion for summary judgment as to Ms. Moody's claim of discriminatory pricing is due to be denied.

### 4.  Mississippi Malls

#### a.  Artis Smith

Ms. Smith visited two Dillard's salons in Jackson, Mississippi.  She was a customer at two Dillard's salons in Jackson for about 12 years, and testified that she regularly paid between $25 and $35 to have her hair styled.  There is no evidence, however, concerning what price Caucasians were charged for any similar services, nor is there any evidence that either of the two Mississippi salons had dual prices based on the customer's race, or that either salon engaged in any type of discrimination.[14]

---

[14]    The only evidence the plaintiffs point to in support of a claim arising in Mississippi is the testimony of Edna Stuckey, a stylist in Ridgeland, Mississippi.  However, Ms. Stuckey testified only that she charged her customers based on the amount of time and effort she spent on their hair. Even if Ms. Stuckey's testimony can be construed as evidence that she charged black customers more than white customers, there is no evidence that Ms. Stuckey styled Ms. Smith's hair, or that other stylists at the salon where Ms. Smith went charged black customers more than white customers for similar services.  Absent some nexus between the plaintiff's hairstyle and a discriminatory price, it cannot be presumed that she suffered a discriminatory price.

Defendant also argues that Ms. Smith has failed to demonstrate that her claims are not barred by the statute of limitation.[15]  Ms. Smith did testify that she believed, but was not sure, that her last visit to a Dillard's salon was in 2004.  A belief or estimate, grounded in fact or the witness's recollection, can be sufficient to create a genuine issue of fact for resolution by a jury.  Taken in the context of her other testimony on this subject, the court must conclude that the plaintiff has presented "substantial evidence" that her claims arose within the requisite time period.  She testified as follows:

> Q.    Okay.  Do you know what period of time we are talking about?  Was there a discrete period of time that you went to Metro Center Mall Dillard's?
>
> A.    From '90 – well, I know I started going back on occasion after we moved back in 1991, so it would have been between that time and probably 2004.
>
> Q.    How about North Park Mall?
>
> A.    Now, I don't even know – I don't remember when North Park Mall opened, so I don't remember.  I don't remember when I visited there.
>
> Q.    Okay.  Has it been more than four years ago?
>
> A.    I don't know.
>
> Q.    Do you know as we sit here today whether or not you have been to a Dillard's salon in the last three years?
>
> A.    I believe the last time I went was 2004, sometime in 2004.

---

[15]    The parties agree that the Alabama plaintiffs' claims are governed by a two-year statute of limitations, while Ms. Smith, as a Mississippi resident whose claims arose in Mississippi, is subject to that state's three-year statute of limitations.  However, because Ms. Smith simply doesn't know when she paid for the prices she now claims are discriminatory, her claims are barred even under the longer statute of limitations.

19

Q.      Why do you say – why do you think it was in 2004?

Q.      Actually, it's a guess because I know it's been a while.

(Witness shakes head.)

Q.      What makes you guess 2004 as opposed to 2003 or 2002?

A.      I don't know.

Q.      Is it possible the last time you went was in 2002?

A.      I believe it's been since then.

Q.      You believe it's been more recent than that?

A.      I believe, as I stated, that the last time I was there was in 2004.

(Smith Dep., pp. 18-20).  The time bar of the statute of limitation is an affirmative defense, one that must be proven by the defendant asserting it.  The plaintiff in an action ordinarily is not required to prove as an element of her claim that the claim accrued within the limitation period.  Because the statute of limitations is an affirmative defense, it falls to the defendant to come forward with "substantial evidence" to *negate* the timely accrual of the action.  The absence or ambiguity of the evidence on when the claim accrued falls on the defendant as the party bearing that burden of proof.

For this reason, the court does not believe that defendant's plaintiff Smith's claim is time barred by Mississippi's three-year statute of limitation.  Rather, her claim fails on the more fundamental basis that she has not offered any evidence of discriminatory or disparate pricing with regard to any hair services she received.  In order to state a *prima facie* case under § 1981, she must present "substantial evidence" from which it can inferred that she was charged more for hair services

20

as a form of intentional racial discrimination, and she simply has not presented any evidence of that sort.  Defendant's motion for summary judgment as to Ms. Smith's discrimination claims is due to be granted because Ms. Smith has failed to offer sufficient evidence in support of her claim.

### B.  Non-Discriminatory Reason

Having concluded that some of the plaintiff's have made an adequate *prima facie* showing of discrimination, the question of whether the defendant has articulated a non-discriminatory reason for the price differences need not be reached by this court at this juncture, because the plaintiffs have relied on direct evidence of discrimination.  Even if the evidence were construed as circumstantial, however, the defendant would not prevail on its motion for summary judgment because there are genuine issues of material fact as to whether the articulated reasons are mere pretext.

The defendant has asserted that the reason for any price difference in services for African American customers and Caucasian customers is based not on race, but on the texture of the hair and the time and products required for styling the hair of African American customers.  While defendant may be allowed to argue to a jury that its intent was not discriminatory, the testimony by Ms. Bennett and others belies that explanation.  Linda Gail Bennett testified candidly that, at least at the Eastdale Mall salon during her tenure as salon manager, there were two distinct sets of prices, one for whites and one for "ethnic" customers.  Additionally, several hair stylists have testified that, in their experience, there exists no substantial difference between the time, care, or products that must be used to style African-American hair and that required for the hair of white customers.  Whether this

is correct or not, it creates a genuine issue of fact regarding Dillard's articulated reasons for the price difference sufficient to require denial of summary judgment.

Accordingly, those plaintiffs whose claims arise from hair-styling services received at the Eastdale Mall salon after February 2003, Ms. Thomas, Ms. Casey, Ms. Jones, and Ms. Mallory, all of whom have presented a *prima facie* case of race discrimination, also have demonstrated that the articulated, non-discriminatory reason given by Dillard's is not worthy of belief.  Similarly, Ms. Moody may rely upon the written price list she was shown, and her own testimony that she never was charged the listed price, along with Ms. Maldonado's testimony that all African American customers were charged for a "specialty style," to demonstrate that the reasons given by defendant for the price difference is not worthy of credence.  Accordingly, Plaintiffs Thomas, Casey, Jones, Mallory and Moody have demonstrated the existence of a genuine issue of fact as to the truth of the defendant's reasons for the dual pricing, and the motion for summary judgment as to their race discrimination claim under § 1981 is due to be denied, even if the evidence they have presented was construed as circumstantial.

### 2. Fraud and Suppression

Under Alabama law, to survive summary judgment on an active fraud claim, plaintiffs must show that the defendant made "(1) a false representation, (2) of an existing material fact, (3) that is reasonably relied upon, and (4) damage resulting as a proximate cause."  Wheelan v. Sessions, 50 F. Supp. 2d 1168, 1172 (M.D. Ala. 1999).  See also Liberty National Life Ins. Co. v. Ingram, 887 So. 2d 222, 227 (Ala. 2004); Ala. Code § 6-5-101(1975).  To be actionable as fraud, a statement

must be an "affirmative statement or misrepresentation." Kaye v. Pawnee Construction Co., 680 F.2d 1360, 1366 (11th Cir. 1982)(applying Alabama law).

To prevail on a suppression or concealment claim, the plaintiffs must demonstrate that the defendant suppressed a material fact while under a duty to disclose the fact, and that the injury resulted from the suppression. Doss v. Serra Chevrolet Inc., 781 So. 2d 973, 976 (Ala. Civ. App. 2000). To be liable for a claim of fraudulent suppression under Alabama law, the plaintiff must demonstrate that the defendant had a duty to disclose the allegedly suppressed fact. See, e.g., Flowers v. Ford Motor Credit Co., 959 F. Supp. 1467, 1470 (M.D. Ala. 1997). Such a duty does not arise under Alabama law in a traditional arm's-length business transaction. "When the parties to a transaction deal with each other at arm's length, with no confidential relationship, no obligation to disclose information arises when the information is not requested." Freightliner, L.L.C. v. Whatley Contract Carriers, L.L.C., 932 So. 2d 883, 892 (Ala. 2005), quoting Mason v. Chrysler Corp., 653 So. 2d 951, 954-55 (Ala. 1995). Whether a party has a duty to disclose is a question of law to be determined by the trial court, based on the following factors: "(1) the relationship of the parties; (2) the relative knowledge of the parties; (3) the value of the particular fact; (4) the plaintiffs' opportunity to ascertain the fact; (5) the customs of the trade; and (6) other relevant circumstances." State Farm Fire & Cas. Co. v. Owen, 729 So. 2d 834, 842-43 (Ala. 1998).

Again, the claims set forth as fraud and/or suppression must be examined in light of each plaintiff's experiences at the Dillard's salons. Any plaintiff who has failed to present evidence of the underlying discrimination necessarily cannot prove the fraud or suppression alleged here. Thus, at the threshold, the claims of plaintiffs Sturdivant, Harris, and Smith fail. Even the plaintiffs who

have presented evidence of race-based pricing cannot prevail on an active fraud claim absent evidence that a misrepresentation was made to her, on which she relied to her detriment.  Similarly, unless there was a material fact that the defendant had a duty to disclose to the plaintiff and did not, that plaintiff cannot prevail on her suppression claim.

The general allegations of the complaint aver that the salons either falsely represented that all customers would be charged the same price for a service, or that they failed to disclose to the plaintiffs that they had a dual-pricing system.  The only plaintiffs whose testimony arguably supports a claim of active fraud are Patricia Mallory, who was told that she would be charged $15, but was actually charged $30, and Sandra Moody, who was told that the $18 charge was based on the time spent by the stylist, and not on the race of the customer.[16]  On the other hand, plaintiffs who were given no information about pricing or who, like Ms. Harris claims, were actually informed about race-based pricing and nevertheless continued to receive services, cannot now claim that they were defrauded or that they relied to their detriment on any allegedly false statement.  Thus, with the possible exception of plaintiffs Mallory and Moody, the active fraud claims of all of the other plaintiffs must fail.

Turning to the claims of plaintiffs Mallory and Moody, the court also finds that they have failed to show that they relied on a representation about "an *existing material* fact."  Ms. Mallory testified that, *after* she already had received her hairstyling services, she telephoned the salon

---

[16]     Although the plaintiffs generally allege that salon service lists with "ethnic" and "Caucasian" prices constitute an affirmative misrepresentation, none of the plaintiffs at bar claims to have seen or relied on such a list.

receptionist *while still in the salon*, and was quoted a $15 price for a wash and set.  When she arrived at the salon earlier, however, she was told that the price would be $35, and when her hairstyling was finished, she received a bill for $30.

Ms. Mallory's own testimony shows that she did not ask for or receive the $15 estimate until *after* she was informed that the cost would be $35 and *after* she had agreed to that price and the services had been performed.  She could not possibly have relied on any representation about a $15 price when deciding whether to pay $30 for services already performed.  At the class certification hearing (the transcript of which has been offered by plaintiffs in opposition to the motion for summary judgment), she testified as follows:

> Q:   Okay.  Now, tell the court, if you will, the occasion for your visit to Dillard's salon in 2004.
>
> A:   I had just met Vaughn Thomas and she informed me that she had went to Dillard's.  Ans I said, oh, I used to go to Dillard's, too.  And she said, well, why is it down here that the prices are so different?  And I said, what you mean?  She said, do you know there is a different price for blacks that it is for whites?  And I said, no.  No.  I went to Dillard's, I didn't notice anything.
>        She said, well, you know, I did talk to someone and they did inform me, a hairstylist.  So I said, well, girl, you probably, it's probably and isolated incident or something like that, you know.
>
> * * *
>
> Q:   Then you decided to go the Dillard's to see for yourself in 2004?
>
> A:   Yes, I did.
>
> Q:   All right.  Tell me about your visit to the Dillard's salon in 2004.
>
> A:   I went to Dillard's and I asked for a wash and a roller/set.  And Patricia Rackley was my stylist.

Q:      And what did she say in response to your inquiry?

A:      She said it would be thirty-five dollars for a roller/set.

Q:      Okay.  Did you proceed to have the service?

A:      Yes, I did.

Q:      Explain to the court exactly what was done during that service in 2004 by Ms. Rackley.

A:      Ms. Rackley took me to the back to the shampoo bowl and she shampooed my hair and she also did a conditioner, and she rolled my hair and put me under a dryer.  After leaving the dryer, I went back to her seat, her styling chair, and then she wrapped my hair and took the rollers out and wrapped my hair around my head, and then she put me back under the dryer for maybe ten minutes.

Q:      Okay.  And then she handed you a ticket for the services?

A:      Yes, she did.

Q:      How much was the ticket for?

A:      Thirty dollars.

Q:      Okay.  Now, after you left the salon, what did you do?

A:      Well, actually before I left the salon, I did something.

Q:      Tell the court what you did.

A:      I was kind of upset because it was taking her so long to come and take my rollers out.  So I took my rollers out myself.  So I asked her, I said, when are you going to let me go because my hair is dry?  She said, I'm working with some other customer because as soon as I put them in the chair, I will put you in the chair and style your hair.

        Then I say, okay, then.  What I did was, I was still curious about what Ms. Thomas had told me.  So I got on the telephone, and I called Dillard's. And so the receptionist answered the phone.  I was looking at her, she answered the phone.  And I said — she said, hello.  I said, hello.  She said,

> I said, how much would it cost for a wash and set?  She said, what is the
> length of your hair?  I said, long.  And so then she, it will be fifteen dollars.
> I was like, I didn't — I said, okay, bye.
>
> And I'm looking — I am sitting here and I'm being charged now
> thirty dollars.  So what is the difference, you know, if the length of my hair
> is longer and I change my voice a little bit that all of a sudden it's fifteen
> dollars.
>
> And so I was real upset about it and thinking like, well, Vaughn may
> have a point here, she may be right.  So I went home and that was it.

(Class Certification Hearing Transcript, pp. 389-400).  Plainly, Ms. Mallory did not and could not

have relied on the $15 price quote in making the decision whether to have hairstyling services

performed at Dillard's as she had already been given a $35 estimate by the stylist before she ever

decided to proceed with her hairstyling.  She received the $15 price quote *after* she had been told the

price would be $35, she had decided to proceed with the services based upon the $35 price quote,

and she had received an actual ticket for $30.  It simply cannot be asserted that she reasonably relied

on $15 price quote to her detriment.

Similarly, Ms.  Moody testified that she received hairstyling services at the Dillard's salon

in the Madison Square Mall in Huntsville.  She testified that *after* receiving services and being

charged a price of $38 on one occasion and $40 on another, she was shown a "price menu" showing

a price of $18 for a wash and set and $38 for a "specialty style."  She now argues that this constituted

a fraudulent representation about prices because she was not told that there was a separate "price

menu" for white customers.  This contend suffers from the same fatal flaw as Ms. Mallory's —

plaintiff could not have reasonably relied on the prices reflected in the "price menu" because she did

not see it until *after* she had decided to proceed with her hairstyling services.  At pages 218 through

225 of the Class Certification hearing Transcript, Ms. Moody described the four occasions that she went to the Dillard's salon, the services she received, the prices she was charged. Only on the fourth occasion did she raise a question about the price she was being charged and she was shown the price list. Once again, it cannot be said that plaintiff relied on the price list to her detriment.

Even if it can be said, for purposes of a fraud action, that plaintiff relied on the price menu at some point, whether a different price list existed for white customers was not a material fact for purposes of a fraud action.[17] There is no dispute that the prices shown plaintiff were the prices she was charged for the services she received. Nothing in Alabama fraud law requires a merchant to disclose or explain his motivation for setting a certain price or quoting a price to a particular customer. Our free-market economy leaves every merchant free to set whatever price the market will bear,[18] and every customer is free to seek a better price from someone else. A merchant is not required to reveal to one customer that he may have given a more favorable price to another customer. Thus, that plaintiff was shown a list of prices for certain service, but not told that other customers were given more favorable prices, does not mean that anything was misrepresented to her. She was not quoted one price, but charged another — she was charged the price she was shown. The fact *material* to her economic decision to purchase the service was the fact of the price itself, not

---

[17]     The court wishes to be clear here. Discriminatory pricing may well make out a claim under 42 U.S.C. § 1981, but the issue here is whether it makes out a state-law fraud claim. Finding that it does not, does not condone the discrimination, for which the remedy is not fraud, but an action under § 1981.

[18]     Subject to the prohibitions against discrimination embodied in § 1981.

what motivated the setting of the price or even that different prices had been quoted to other customers.[19]  There simply was no misrepresentation of any *material* existing fact.

Plaintiffs Mallory's and Moody's claims of fraudulent suppression or concealment are likewise due to be dismissed.  The plaintiffs have failed to demonstrate that the defendant had any duty to disclose information on pricing to them.  They engaged in arm's-length commercial transactions.  The transactions at issue simply did not involve confidential relationships, and are not the types of transactions in which such a duty arises under Alabama law.  Accordingly, all of the claims of fraud and concealment are due to be dismissed.  Summary judgment will be granted on all fraud and concealment claims.


### 3. Negligent Supervision

All of the negligent supervision claims asserted by the plaintiffs rest on the assertion that Dillard's "agents and/or employees were effectuating a racially discriminatory dual pricing system in their individual stores."  (Third Amended Complaint, Paragrah 89).  As discussed in relation to the racial discrimination claims, there is no evidence to support the claims of a "dual pricing system" in any store except the Eastdale Mall salon and the Madison Square Mall salon.  But even as to those

---

[19]     Again, whether white customers were favored with lower prices than African-American customers due to race discrimination is a matter for litigation under § 1981, but not under tradition Alabama or common-law fraud.

salons, the failure of management to detect or prevent, or even the participation of management in, racially discriminatory pricing does not create a cognizable claim under Alabama law.[20]

The defendant further asserts that a claim of negligent supervision cannot lie unless the underlying wrong — in this case, racial discrimination — constitutes a tort under Alabama law. Although the court is unaware of any case addressing whether such race discrimination in a commercial context can give rise to a negligent supervision claim, defendant's contention appears to have a basis in law. In Thomas v. Utility Trailer Mfg. Co., No. 1:05-cv-914-MEF WO, 2006 WL 2480057 (M.D. Ala. Aug. 28, 2006), the court held:

> Neither does Alabama recognize a common-law tort for race and gender discrimination; thus Thomas "cannot maintain an action for negligent supervision, training, and/or retention based upon conduct that is employment discrimination, but does not support a common-law tort."

Thomas, 2006 WL 2480057 at *3, quoting Thrasher v. Ivan Leonard Chevrolet, Inc., 195 F. Supp. 2d 1314, 1320 (N.D. Ala. 2002). Both Thomas and Thrasher involved underlying claims of employment discrimination, but appear to stand for the broader contention that the underlying wrong must constitute a state-law tort. Because racial discrimination itself does not appear to be a recognizable tort under Alabama law, the failure of management to prevent its agents and employees from engaging in it cannot support a claim for negligent supervision. Accordingly, all of plaintiffs'

---

[20]    Once again, to be clear, the court is discussing claims under Alabama law, not claims under § 1981.  Plainly, racially discriminatory pricing will contravene § 1981, but it is a separate question whether it violates Alabama law.

claims of negligent supervision appear to be unfounded in Alabama law, and the motion for summary judgment on these claims is due to be granted.

### 4. Damages

Defendant also seeks summary adjudication of plaintiffs' prayer for damages based on the doctrine of unjust enrichment, for other equitable relief in the form of injunctive or declarative relief, and for punitive damages.

Under Alabama law, plaintiffs may be entitled to equitable relief under the doctrine of unjust enrichment if the defendant's "retention of a benefit would be unjust." Jordan v. Mitchell, 705 So. 2d 453, 458 (Ala. Civ. App. 1997). Such relief may be proper where the defendant has received the funds as a result of some "unconscionable conduct." See, *e.g.*, Scrushy v. Taylor, 955 So. 2d 988, 1009 (Ala. 2006). As to those claims of race discrimination for which plaintiffs have presented sufficient evidence to overcome the motion for summary judgment, it is at least conceivable that the conduct complained of could constitute unconscionable conduct under Alabama law. Accordingly, the motion for summary judgment as to any unjust enrichment claims is due to be denied as to plaintiffs Thomas, Jones, Casey, Mallory, and Moody.

Similarly, the race discrimination complained of, if proven at trial, could entitle plaintiffs to an award of punitive damages. Kolstad v. American Dental Ass'n, 527 U.S. 526 (1999)(punitive damages available in cases where the defendant acts with malice or reckless disregard for plaintiffs' federally protected rights. There are genuine issues of fact as to whether Dillard's may be responsible for its agents and employees who are alleged to have acted with malice or reckless

31

disregard of the plaintiffs' rights under § 1981 to contract free of racial discrimination.  At this stage, the motion for summary judgment will be denied on this issue.

Finally, if plaintiffs prove their claims that certain Dillard's salons did, and are continuing to, engage in discriminatory pricing, it is conceivable that the plaintiffs would be entitled to injunctive relief.  The court acknowledges that there can be serious questions of standing raised in light of the fact that plaintiffs may avoid the allegedly discriminatory pricing by not patronizing Dillard's salons.  But such a position essentially allows discriminatory pricing to go on undeterred by burdening the right of these plaintiffs to engage in commercial activity free of racial discrimination.  Without potential injunctive relief, plaintiffs must give up their right to be free of racial discrimination in order to trade with Dillard's, and that is precisely what § 1981 was designed to correct.

For all of these reasons, the motion for summary judgment as to unjust enrichment, punitive damages, and injunctive relief is due to be denied as to the plaintiffs whose claims are not otherwise subject to summary adjudication.


## CONCLUSION

Having reviewed and carefully considered the motion, the briefs, and the evidence and arguments presented by both parties, the court finds that the motion for summary judgment (doc. 115) is due to be granted in part and denied in part.  The motion for summary judgment as to the § 1981 race discrimination claims raised by plaintiffs Thomas, Jones, Casey, Mallory and Moody is due to be denied, and those claims may proceed, including as potential forms of relief punitive

damages and injunctive and equitable relief.  The motion for summary judgment as to all state-law claims asserted by plaintiffs Thomas, Jones, Casey, Mallory and Moody is due to be granted, and such state-law claims will be dismissed with prejudice.  The motion for summary judgment is due to be granted with respect to all claims, state and federal, asserted by plaintiffs Sturdivant, Harris, and Smith, and their claims will be dismissed with prejudice.

A separate order will be entered herewith granting in part and denying in part the defendant's motion for summary judgment.

Dated the 27th  day of September, 2007.


T. MICHAEL PUTNAM
U.S. MAGISTRATE JUDGE